IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER RUFFATT<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security*<br><br>    Defendant. | CIVIL ACTION NO. 20-63 |

MEMORANDUM OPINION

Rufe, J.                                                                                                    October 17, 2023

Plaintiff Christopher Ruffatt filed this action requesting judicial review of the Commissioner of Social Security's denial of his claims for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). The Court referred this case to a United States Magistrate Judge, who issued a Report and Recommendation ("R&R") that Plaintiff's request for review be denied because the Administrative Law Judge ("ALJ") supported his determination with substantial evidence.[1] Plaintiff has filed objections to the R&R, to which the Commissioner has responded. As set forth below, upon this Court's careful and independent consideration of the administrative record, the parties' submissions, and the applicable law, the Court sustains Plaintiff's objections in part and declines to adopt the R&R.

---

\* Substituted under Fed. R. Civ. P. 25(d).

[1] *See* R&R [Doc. No. 20].

I.     BACKGROUND

Plaintiff is a 47-year-old man who previously worked as a transportation security officer.[2] His duties involved baggage handling that included heavy lifting.[3] Plaintiff filed for DIB and SSI on May 12, 2017 and July 20, 2017, claiming that he was disabled as of December 10, 2011, because of "severe anxiety, social anxiety, depression, middle and lower back pain, hip and groin pain, foot injuries, and severe [osteoarthritis] with bone spurs in his right and left shoulders ......."[4]

The ALJ employed a five-step sequential evaluation process to determine whether Plaintiff was disabled under 20 C.F.R. §§ 404.1520(a) and 416.920(a).[5] The ALJ found that Plaintiff had severe: (1) arthritis in multiple joints; (2) depression; (3) anxiety; and (4) post-traumatic stress disorder.[6] The ALJ determined that these impairments did not meet or medically equal a Listing; specifically, the ALJ found that Plaintiff did not meet the criteria of Listings 1.02

---

[2] R. 167, 176.

[3] R. 52.

[4] R. 30.

[5] An ALJ reviewing an application for disability benefits must employ the five-step process established in the Social Security Regulations (the "Regulations") to determine whether a disability exists. At step 1, the ALJ must determine whether the applicant is engaged in "substantial gainful activity;" if she is, the claim is denied. If the applicant is not engaged in substantial gainful activity, the ALJ must determine at step 2 whether the applicant suffers from a severe, medically determinable impairment, or a combination of impairments that is severe, which significantly limits her ability to work. If the applicant has such an impairment or combination of impairments, the ALJ must determine at step 3 whether the impairment found meets the criteria for any of the impairments conclusively presumed to be disabilities, which are listed in Part 404, Subpart P, Appendix 1 ("the Listings"), or has an equivalently debilitating medical condition. If the applicant has a severe impairment that does not meet or equal an impairment in the Listings, the ALJ must determine at step 4 whether the applicant has the Residual Functioning Capacity ("RFC") to perform her former relevant work. If the applicant does not have the RFC to perform her past relevant work, the Commissioner must establish at step 5 that the applicant has the RFC to perform other work that exists in the national economy, considering her age, education, and work experience. At this fifth step, if the Commissioner cannot demonstrate that the applicant has the RFC to perform other existing work, the ALJ must find the applicant to be disabled.

[6] R. 27.

2

(major dysfunction of a joint), 12.04 (depressive, bipolar, and related disorder), 12.06 (anxiety disorder), or 12.15 (trauma- and stressor-related disorders).[7] Next, the ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform a limited range of sedentary work.[8] Using testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff has the ability to perform certain jobs in the national economy, such as inspector, assembler, and machine operator.[9] The ALJ denied Plaintiff's claim and the Appeals Council declined review.[10]

Plaintiff then sought review of the ALJ's decision in this Court. The R&R recommended that the ALJ's decision be affirmed, and judgment entered for the Commissioner. Plaintiff objects to the R&R, advancing the same arguments that he raised in his request for review. For the reasons set forth below, the Court agrees with Plaintiff's objections in part.

## II. STANDARD OF REVIEW

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding.[11] The Court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[12] When the Commissioner's findings are supported by substantial evidence, they are to be held conclusive, "even if [the Court] would have decided the factual inquiry differently."[13] The Court's scope of review is thus "limited to

---

[7] R. 28; R&R 13; 20 C.F.R. pt. 404, subpt. P, App. 1.

[8] R. 30.

[9] R. 39.

[10] R. 40, 1.

[11] 42 U.S.C. § 405(g).

[12] *Id.*

[13] *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact."[14]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15] It is "more than a mere scintilla" but "less than a preponderance of the evidence."[16] The standard is deferential to any inferences drawn from the facts when "they, in turn, are supported by substantial evidence."[17] In reviewing the R&R, the Court reviews *de novo* any portions to which Plaintiff objected.[18] The Court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[19]

### III. DISCUSSION

Plaintiff objects to the R&R on multiple grounds: (1) the ALJ failed to reasonably assess the medical opinion evidence; (2) the ALJ failed to reasonably explain his finding that Plaintiff does not meet or medically equal a Listing; (3) the ALJ failed to address the statements of a third-party lay witness; (4) the ALJ failed to provide an appropriate hypothetical to the VE; (5) the ALJ failed to address specialization. The Court will address each objection in turn.

#### A. *Whether the ALJ Reasonably Assessed the Medical Opinion Evidence*

---

[14] *Schwartz v. Halter*, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

[15] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted); *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (quoting *Richardson*, 402 U.S. at 401).

[16] *Jesurum*, 48 F.3d at 117 (citing *Richardson*, 402 U.S. at 401).

[17] *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

[18] 28 U.S.C. § 636(b)(1)(C).

[19] *Id.*

Plaintiff argues that the ALJ did not reasonably assess the medical opinion evidence concerning his physical impairments.[20] The ALJ reviewed the opinions of Dr. Ondis, the State agency psychological consultant, Dr. Mesaros, the State agency medical consultant, Dr. Dzurinko, a one-time examining physician, and Drs. Morgan and Kalman, Plaintiff's treating physicians.[21] Plaintiff argues that (1) the ALJ failed to explain his implicit rejection of Dr. Dzurinko's opinion that Plaintiff could not reach at all with his right hand, and (2) the ALJ did not reasonably address the opinion evidence of his treating orthopedist, Dr. Morgan.[22]

Plaintiff argues that the ALJ did not adequately explain his decision to reject Dr. Dzurinko's opinion that Plaintiff could not reach at all with his right hand.[23] If the ALJ included this determination in his opinion, then—Plaintiff suggests—the RFC would have resulted in a determination that Plaintiff was fully disabled.[24] Plaintiff argues that the error is prejudicial, as accepting the limitation would rule out the occupations that the VE identified in his testimony.

The ALJ stated that he was moderately persuaded by Dr. Dzurinko's determinations. Although Dr. Dzurinko opined that Plaintiff "could never reach with his right hand," the ALJ focused on the part of Dr. Dzurinko's opinion concluding that "the claimant had equal five out of five strength in his arms and legs and no abnormalities or muscle atrophy in the claimant's extremities . . . [and] had normal grip strength in both hands, intact hand and finger dexterity,

---

[20] R. 9–13.

[21] R. 35–37.

[22] Pl.'s Objs. to R&R [Doc. No. 21] at 9–13.

[23] Pl.'s Obj. to R&R [Doc. No. 21] at 11; *See also* R. at 702.

[24] Pl.'s Obj. to R&R [Doc. No. 21] at 17; Pl.'s Reply [Doc. No. 18] at 8–9.

intact fine and dexterous movements, and [the ability] to button, zip, and tie."[25] The ALJ found that Plaintiff had the RFC to occasionally reach overhead with his hands bilaterally.[26]

The ALJ did not explain why he rejected the finding that Plaintiff could not reach with his right hand. Indeed, the ALJ stated that Dr. Dzurinko's opinion was "largely supported by and consistent with medical imaging and the record provided."[27] The Court agrees with the Plaintiff that the ALJ was required to adequately explain the implicit rejection of Dr. Dzurinko's opinion that Plaintiff could not reach with his right hand.

Second, Plaintiff argues that the ALJ did not reasonably explain his conclusion that the opinion of Dr. Dzurinko, a one-time examiner, should be entitled more weight than that of his treating orthopedist, Dr. Morgan. Plaintiff represents that Dr. Dzurinko is a gynecologist,[28] although this is not in the administrative record. In any event, to the extent that Plaintiff takes issue with Dr. Dzurinko's credentials, there is nothing in the record to show that Dr. Dzurinko was not qualified to perform the type of examination at issue. Furthermore, specialization is only one of multiple factors, not all of which are required to be discussed. The only factors that must be discussed are consistency and supportability.[29]

However, the ALJ did not provide a sufficient explanation as to why he viewed part of Dr. Dzurinko's opinion from a one-time examination to be more persuasive than the multiple

---

[25] R. 36.

[26] R. 30.

[27] R. 30.

[28] Pl.'s Obj. to R&R [Doc. No. 21] at 10.

[29] *Hopkins v. Comm'r of Soc. Sec.*, 813 F. App'x 775, 778–80 (3d Cir. 2020) (holding that ALJ did not err in affording the opinion of claimant's treating pulmonologist partial weight because the ALJ considered support of the medical opinion by relevant evidence and consistency of the opinion with the record as a whole).

examinations conducted by Dr. Morgan, Plaintiff's treating orthopedist. In comparing the findings of Dr. Morgan and Dr. Dzurinko, the ALJ stated that Dr. Morgan found that Plaintiff had a limited ability to grasp and turn, but Dr. Dzurinko found that Plaintiff retained five out of five strength in his arms and legs with no abnormalities or muscle atrophy in his extremities, normal grip strength in both hands, intact hand and finger dexterity, intact fine and dexterous movements, and the ability to button, zip, and tie.[30] Here again, the ALJ did not account for Dr. Dzurinko's finding that Plaintiff could not reach with his right hand. In addition, although both doctors found that Plaintiff had a significantly reduced range of motion in both shoulders,[31] the ALJ stated that Dr. Morgan "failed to provide a detailed examination of Plaintiff's shoulders."[32] This is contrary to the administrative record, which shows that Dr. Morgan had multiple appointments with Plaintiff, conducted multiple rounds of X-rays, and ordered an MRI.[33]

      The ALJ's failure to adequately explain how Dr. Morgan's determinations about Plaintiff's physical capabilities were "inconsistent with . . . [Dr. Morgan's] treatment notes and the medical evidence provided"[34] is especially important because the ALJ *relies* on Dr. Morgan's examination of Plaintiff's shoulder as support for Dr. Dzurinko's and Dr. Mesaros's findings.[35]

---

[30] R. 36.

[31] R. 36.

[32] R. 36.

[33] R. at 750–56.

[34] R. 36.

[35] R. 36.

B. *Whether the ALJ Reasonably Explained His Reasoning that Plaintiff Did Not Meet or Medically Equal a Listing*

1. Plaintiff's Physical Impairments

Plaintiff contends that the ALJ failed to reasonably explain his finding that Plaintiff's physical impairments do not meet or medically equal Listing 1.02 (major dysfunction of a joint).[36] Plaintiff argues that "a few findings from a single brief examination are a weak basis of what he can do with his hands on a sustained basis."[37] Plaintiff argues that the ALJ only dedicated a "single sentence" to Plaintiff's shoulder impairments and that the ALJ failed to explain why he rejected evidence on the record showing further impairment of the hands.[38] The Court agrees in part.

To meet the requirements of Listing 1.02 (major joint dysfunction), there must be involvement of "one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively," or involvement of "one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively."[39] As the R&R explains, Listing 1.02b "borrows its definition of 'inability to perform fine and gross movements effectively' from Listing 1.00B2b, which defines it as an 'an extreme loss of function of both upper extremities.'"[40]

---

[36] R. 28.

[37] Pl.'s Objs. to R&R [Doc. No. 21] at 3.

[38] Pl.'s Objs. to R&R [Doc. No. 21] at 2–3.

[39] R&R 13 (quoting 20 C.F.R. pt. 404, subpt. P, App. 1).

[40] R&R 13 (quoting Listing 1.00B2b).

8

The ALJ concluded that Plaintiff's osteoarthritis in his right and left shoulders and hips did not meet or medically equal the criteria of Listing 1.02.[41] When assessing Plaintiff's lower extremities, the ALJ relied on medical imaging of Plaintiff's hips, which showed "only mild degenerative changes," and reports from multiple examinations revealing that Plaintiff could perform "normal heel walk, toe walk, and squat."[42] When assessing Plaintiff's upper extremities, the ALJ based his finding solely on the part of Dr. Dzurinko's one-time examination that determined that Plaintiff "had five of five grip strength in both hands, intact hand and finger dexterity, intact fine and dexterous movements, and that he was able to button, zip, and tie."[43]

The ALJ failed to address the effect of Plaintiff's shoulder impairments on his ability to perform fine and gross movements effectively,[44] placing an unduly predominant reliance on Dr. Dzurinko's conclusion regarding certain fine movements without discussing any of the medical evidence related to Plaintiff's shoulder. [45] The R&R acknowledged Plaintiff's left and right shoulder dysfunction and need to undergo total shoulder replacement in both shoulders,[46] but it stated that Plaintiff failed to show that his shoulder dysfunctions resulted in the inability to

---

[41] R. 284. Plaintiff was diagnosed with advanced osteoarthritis with bone spurs, requiring left and right shoulder replacement. R. 762.

[42] R. 284.

[43] R. 28.

[44] 20 C.F.R. 1.02B, pt. 404, subpt. P, App'x 1.

[45] Dr. Morgan and Dr. Block treated Plaintiff for his shoulder impairments. Throughout Plaintiff's multiple visits with Dr. Morgan and Dr. Block for his shoulder pain, it was determined that Plaintiff had severe osteoarthritis with a large humeral osteophyte and loss of cartilaginous clear space; that Plaintiff's shoulder has very limited range of motion; and severe genohumeral osteoarthritis with degenerative tearing of the glenoid labrum. *See* R. 401, 404, 413.

[46] R&R 14.

perform fine and gross movements effectively.[47] However, the ALJ failed to assess all the relevant medical evidence, namely the shoulder impairments, when coming to a determination on Listing 1.02. Therefore, the conclusion is not supported by substantial evidence.

2. Plaintiff's Mental Impairments

Plaintiff next argues that the ALJ did not reasonably explain his finding that Plaintiff's mental impairments do not meet or medically equal Listings 12.04 (depressive, bipolar, and related disorder), 12.06 (anxiety disorder), or 12.15 (trauma- and stressor-related disorders).[48] Specifically, Plaintiff argues that the ALJ's explanations "are marred by misleadingly selective characterization of the pertinent evidence" and that "the ALJ's purported explanations for the four domain findings do not fairly represent the record."[49] The Court disagrees: the ALJ's findings as to Listings 12.04, 12.06, and 12.15 were adequately supported.

Listings for mental impairments may be met in two ways. A claimant must satisfy the requirement of Paragraph A, in addition to the requirements of Paragraph B or C.[50] Plaintiff meets the "A" criteria, which requires medical documentation of one of the applicable diagnoses. The "B" requirements are met if the impairments result in at least one extreme or two marked

---

[47] *Id*. Here, the R&R points to further evidence in the record showing Plaintiff's ability to perform chores and engage in recreational activities, including fishing and working out. However, a court must rely on the reasoning and findings provided by the ALJ. *See Cortes v. Comm'r of Soc. Sec.*, 255 Fed. App'x 646, 655 n.6 (3d Cir. 2007) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (citing *SEC. v. Chenery Corp.*, 318 U.S. 80, 87 (1943). The ALJ did not rely upon this evidence in his initial determination, although it may come into the ALJ's explanation upon remand.

[48] R. 28–29.

[49] Pl.'s Objs. to R&R [Doc. No. 21] at 5.

[50] 20 C.F.R. pt. 404, subpt. P, App. 1 §§ 12.04, 12.06, 12.15.

limitations[51] in a broad area of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing themselves. The "C" requirements are met if there is evidence of marginal adjustment, defined as the minimal capacity to adapt to changes in the claimant's environment or to demands not already part of his daily life.[52] Plaintiff argues that the ALJ's explanations as to the first three domains of Criteria B do not fairly represent the record.[53]

      a. <u>B Criteria: Understanding, Remembering, or Applying Information</u>

The ALJ found that Plaintiff had a mild, not marked or extreme, limitation in understanding, remembering, or applying information because Dr. Block (his treating psychiatrist) and Penn Psychiatric Providers consistently determined that he had "normal recent and remote memory, and an ability to pay attention and remain focused."[54] The ALJ also considered the fact that Plaintiff regularly shops, drives, and reads. [55] Plaintiff argues that these statements may be true, but they do not support a conclusion that he only has a mild limitation in understanding, remembering, or applying information. However, as explained in detail in the R&R, there is substantial evidence in the record to support the ALJ's finding that Plaintiff has mild limitations in understanding, remembering, and applying information.[56]

---

[51] A marked limitation means the degree of claimant's limitation seriously interferes with his ability to function in this area independently, appropriately, effectively, and on a sustained basis. An extreme limitation means claimant is unable to function in this area independently, appropriately, or effectively, on a sustained basis.

[52] *See, e.g.,* 20 C.F.R. pt. 404, subpt. P, App. 1 §§ 12.04C, 12.06C, 12.15C.

[53] Pl.'s Objs. to R&R [Doc. No. 21] at 5–7.

[54] R. 510, 515, 518–19, 522, 528, 531, 538, 541, 550, 558, 566, 570, 574, 578, 582, 586, 590, 598, 614, 619, 626, 632, 637, 643, 648, 653, 658, 664, 668–69, 674, 678, 719, 724, 729, 735, 741.

[55] R. 28.

[56] R&R 16–17.

11

b.  B Criteria: Interacting with Others

The ALJ found that Plaintiff had a moderate limitation in interacting with others. Plaintiff argues that the ALJ dismissed evidence of a serious impairment in this domain and instead "cherry-pick[ed]" and misrepresented the evidence.[57] The ALJ was persuaded by Dr. Block's observations that Plaintiff was cooperative during sessions.[58] It is true that Plaintiff's relationship with his psychiatrist does not necessarily represent his relationship with others in a non-clinical social setting. However, Dr. Block also opined that Plaintiff possessed the ability to resist his impulses, found that Plaintiff's anxiety was under control with his medication regimen in February 2018, and noted that his Global Assessment of Relational Functioning and social phobia index scores improved "significantly" over time.[59] Furthermore, Plaintiff testified that he watches TV with others, socializes with friends, and goes shopping, despite his claims of social anxiety.[60] The ALJ pointed to sufficient evidence to uphold a finding of a moderate limitation in interacting with others.

c.  B Criteria: Concentrating, Persisting, or Maintaining Pace

The ALJ found that Plaintiff had a moderate limitation in the domain of concentration, persistence, or maintaining pace.[61] Plaintiff contends that the ALJ failed to provide a reasonable explanation for this finding.[62] The ALJ explained his finding by pointing to the record, which

---

[57] Pl.'s Objs. to R&R [Doc. No. 21] at 7.

[58] R. 28.

[59] R. 29.

[60] R. 28.

[61] R. 29.

[62] Pl.'s Objs. to R&R [Doc. No. 21] at 7.

12

establishes that Plaintiff reads, watches television, and can manage his own finances.[63] The ALJ cited to numerous instances on the record where Dr. Block and his therapist stated that Plaintiff had the ability to pay attention and remain focused.[64] Therefore, the ALJ provided sufficient reasoning to support his decisions.

### 3. The Combined Effects of Plaintiff's Mental and Physical Impairments

Plaintiff argues that the ALJ failed to discuss the combined effects of his mental and physical impairments. When a claimant's impairments do not on their own meet a Listing, the ALJ will determine whether a "combination of impairments is medically equivalent to [a] listing."[65]

Plaintiff contends that the ALJ "did not address the issue at all, other than the conclusory assertion in the finding itself."[66] Plaintiff argues that "as a matter of common sense," there is an interaction between his mental and physical impairments because pain would "obviously add to his impairment in the domain of Understanding, Remembering, or Applying Information as well [as] in the domain of Concentrating, Persisting, or Maintaining Pace."[67] However, the law requires that Plaintiff identify a detailed disabling interaction between the different impairments, as opposed to a generalized "common sense" impairment or a general interrelationship among impairments.[68] In *Morrison v. Commissioner of Social Security*, the Third Circuit held that where

---

[63] R. 29.

[64] *Id.*

[65] 20 C.F.R. §§ 404.1526(b)(3), 416.926(b)(3).

[66] Pl.'s Objs. to R&R [Doc. No. 21] at 8.

[67] Pl.'s Objs. to R&R [Doc. No. 21] at 9.

[68] *See Williams v. Barnhart*, 87 F. App'x 240, 243 (3d Cir. 2004).

the ALJ "explicitly indicated" that he was considering a combination of impairments, there was "no reason not to believe him." [69] The same reasoning applies here.

### C. *Whether the ALJ Reasonably Addressed the Statements of a Third-Party Witness*

Plaintiff next argues that the ALJ did not reasonably address the statements of AbbySue Cannon, Plaintiff's fiancée, outlining Plaintiff's mental and physical limitations. As summarized by the ALJ, Cannon's letter stated that "the claimant has concentration and memory impairments and that his anxiety makes it difficult for him to socialize, maintain personal relationships, perform even small tasks, or deal with stress or change and that his physical injuries make it difficult for him to dress and groom himself and perform most household chores."[70] The ALJ was "not persuaded" by her statements, which he determined were "neither consistent with nor supported by the evidence provided."[71]

In rejecting Cannon's assertions, the ALJ relied on reports from Dr. Block that Plaintiff was consistently cooperative and reflective and had the ability to resist impulses.[72] Plaintiff argues that Dr. Block's progress notes do not indicate that Plaintiff's anxiety was "steadily improv[ing]."[73] However, although Plaintiff cites to places in the record where improvement was not steady, the recent records as a whole show there was sufficient evidence for the ALJ to find

---

[69] 268 F. App' x 186, 189 (3d Cir. 2008).

[70] R. 37.

[71] *Id.*

[72] *Id.*

[73] Pl.'s Obj. to R&R [Doc. No. 21] at 14.

14

that his mental health was improving, he had impulse control, and he was responding to treatment.[74]

With respect to Plaintiff's physical limitations, the ALJ cited Dr. Dzurinko's report to contradict Cannon's assertions that Plaintiff's physical injuries make it difficult for him to do basic tasks. The Court has already determined that the ALJ's conclusion on Plaintiff's physical limitations was not adequately explained. On remand, the ALJ should consider all evidence, including that of non-medical witnesses.

### D. *Whether the ALJ Provided an Appropriate Hypothetical to the Vocational Expert*

Plaintiff argues that the ALJ improperly relied on VE testimony elicited by a hypothetical question that did not accurately reflect all of Plaintiff's impairments. Plaintiff contends that the jobs identified by the VE require reaching beyond the limits found by Dr. Dzurinko and Dr. Morgan. As the case is being remanded, the Court need not address these objections as any hypothetical will necessarily incorporate the findings of the ALJ after further proceedings.

### E. ALJ's Failure to Address Specialization

Plaintiff's claims are governed by 20 C.F.R. §§ 404.1520c and 416.920c because he filed his claims after March 27, 2017. Under the old regulations, the opinions of treating sources were generally given more weight. Under the current regulations, the ALJ takes into account the following factors when considering medical opinions: supportability, consistency, relationship with claimant, and specialization, among other factors.[75] "The most important factors [the ALJ] consider[s] when [she] evaluates the persuasiveness of medical opinions and prior administrative

---

[74] R. 723, 724, 729, 734.

[75] 20 C.F.R. 404.1520c(c).

15

medical findings are supportability . . . and consistency…."[76] The ALJ is not required to discuss all factors, including specialization.[77] The regulations state that the ALJ is only required to discuss the factors of consistency and supportability.[78]

In Plaintiff's view, recognizing the new regulations as valid means that "[t]he Social Security Act, the Supreme Court, and the Third Circuit are entitled to no respect."[79] Specifically, Plaintiff argues that the regulations are inconsistent with 42 U.S.C. § 405(b)(1), which provides:

> The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this title. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.[80]

However, contrary to Plaintiff's interpretation, §§ 404.1520c and 416.920c do not absolve the ALJ from discussing evidence; they merely define *how* the ALJ should analyze and discuss the evidence. The new regulations direct the ALJ to "articulate how [she] considered the medical opinions" and "how persuasive [she] find[s] all of the medical opinions" consistent with Section 405(b)(1).[81] To the extent Plaintiff argues that the new regulations do not fall within the Commissioner's authority delegated by Congress, the Third Circuit has yet to address this issue.

---

[76] 20 C.F.R. 404.1520c(a).

[77] 20 C.F.R. 404.1520c(b)(2).

[78] *Id.* ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but **are not required to**, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions....... ") (emphasis added).

[79] Pl.'s Obj. to R&R [Doc. No. 21] at 10; Pl.'s Reply [Doc. No. 18] at 7.

[80] Pl.'s Reply [Doc. No. 18] at 8 (quoting 42 U.S.C. § 405(b)(1)).

[81] 20 C.F.R. 404.1520c.
16

In a supplemental filing, Plaintiff argues that the Supreme Court's recent decision in *West Virginia v. EPA*[82] supports his position. In *West Virginia*, the Supreme Court held that Congress, by enacting Section 111(d) of the Clean Air Act, did not grant the Environmental Protection Agency ("EPA") the authority to devise emission caps based on the generation-shifting approach the EPA took in promulgating the Clean Power Plan. The Court noted that under the major questions doctrine, there are "extraordinary cases" in which the "history and the breadth of the authority that the agency has asserted, and the economic and political significance of that assertion, provide a reason to hesitate before concluding that Congress meant to confer" certain authority upon an administrative agency.[83] The Court held that this was an "extraordinary" case, such that the EPA must point to "clear congressional authorization" for the authority.[84]

Plaintiff has not shown that this is an "extraordinary" case requiring the Commissioner to point to "clear congressional authorization" for its authority to issue the new regulations. Moreover, the Eleventh Circuit, in the wake of *West Virginia*, has held that Section 404.1520c falls within the Commissioner's express statutory delegation to adopt regulations for adjudicating disability claims and that the Commissioner adequately explained the reasoning for adopting the regulation.[85] The Court declines to hold that the regulations are invalid.

---

[82] 142 S. Ct. 2587 (2022).

[83] *Id.* at 2607–08 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)) (modifications and internal quotation marks omitted).

[84] *West Virginia*, 142 S. Ct. at 2609.

[85] *Harner v. Comm'r of Soc. Sec.*, 38 F.4th 892, 897–98 (11th Cir. 2022).

## IV.     CONCLUSION

For the foregoing reasons, the Court adopts Plaintiff's objections in part and declines to adopt the R&R. The case will be remanded to the Commissioner for a report that is consistent with this memorandum opinion. An appropriate order follows.